## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

CHRISTOPHER DAVID GOODMAN,      )
                                )
    Plaintiff(s),            )
                                )
    v.                       )    Case No. 4:20-cv-00457-SRC
                                )
KILOLO KIJAKAZI,                )
Commissioner of the Social Security )
Administration,[1]              )
                                )
    Defendant(s).            )

### Memorandum and Order

Christopher David Goodman requests judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying his applications for disability-insurance benefits and supplemental-security income under Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq*., 1381, *et seq*.  The Court affirms the Commissioner's decision.

## I.      Procedural history

Goodman filed a Title II application for disability-insurance benefits and a Title XVI application for supplemental-security income on January 4, 2018.  Tr. 10, 143–155.  The Social Security Administration denied his applications on March 21, 2018.  Tr. 10, 72–77.  Goodman requested a hearing before an ALJ on October 24, 2018.  Tr. 10, 78–82.  After a hearing on August 7, 2019, Tr. 33–53, the ALJ denied Goodman's applications in a decision dated October

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Kilolo Kijakazi for Andrew Saul as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

10, 2019.  Tr. 7–24.  On March 20, 2020, the Appeals Council denied Goodman's request for review.  Tr. 1–6.  Thus, the ALJ's opinion stands as the final decision of the Commissioner.

## II.    Decision of the ALJ

The ALJ determined that Goodman has not engaged in substantial gainful activity from his alleged disability onset date of September 17, 2017.  Tr. 12.  The ALJ found that Goodman had the severe impairments of degenerative disc disease of the lumbar and thoracic spine and diabetes mellitus with peripheral neuropathy.  *Id*.  The ALJ also found that Goodman does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 13.

After considering the entire record, the ALJ found that Goodman had the residual functional capacity to perform light work, but he should never be required to climb a ladder, rope or scaffold, or crawl.  *Id*.  The ALJ further found that Goodman can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch.  *Id.*  Goodman can also frequently handle objects using his bilateral upper extremities.  *Id*.  Lastly, the ALJ found that Goodman must avoid hazards, such as unprotected heights, proximity to dangerous machinery, and operational control of moving machinery.  *Id*.

The ALJ found that Goodman cannot perform past relevant work.  Tr. 17.  Goodman has at least a high school education and can communicate in English.  Tr. 18.  After considering Goodman's age, education, work experience, and RFC, the ALJ found that jobs exist in significant numbers in the national economy that Goodman can perform, including cafeteria attendant, furniture rental clerk, and route clerk.  Tr. 18–19.  The ALJ concluded that Goodman was not disabled.  Tr. 19.  Goodman appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

III.    **Legal standard**

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id.* at § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability.  20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1).  First, the Commissioner considers the claimant's work activity.  If the claimant is engaged in substantial gainful activity, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe "impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities."  *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of

3

age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii),
(d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the
presumptively disabling impairments, the Commissioner assesses whether the claimant retains
the "residual functional capacity" ("RFC") to perform his or her past relevant work.  20 C.F.R.
§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An RFC is "defined as the most a claimant can still do
despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir.
2011).  While an RFC must be based "on all relevant evidence, including the medical records,
observations of treating physicians and others, and an individual's own description of his
limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—
and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's
RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016)(quotation and citation omitted).
Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion."
*Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  Ultimately, the claimant is responsible for
*providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the
claimant's "complete medical history, including arranging for a consultative examination(s) if
necessary, and making every reasonable effort to help [the claimant] get medical reports from
[the claimant's] own medical sources."  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (emphasis
added).  If, upon the findings of the ALJ, it is determined the claimant retains the RFC to
perform past relevant work, he or she is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv),
416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work,
the burden of production to show the claimant maintains the RFC to perform work that exists in

significant numbers in the national economy shifts to the Commissioner.  *See Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled.  *Id.*  At step five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant.  *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision.  42 U.S.C. §§ 405(g); 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "[T]he threshold for such evidentiary sufficiency is not high."  *Id.*  Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision."  *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016).  The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence."  *Id.*  The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016).  The Eighth Circuit explained that "[w]e defer heavily to the findings and conclusions of the Social Security Administration." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Hurd*, 621 F.3d at 738) (internal quotations omitted).

IV.     **Discussion**

Goodman argues that the Court should remand on two grounds.  Doc. 14.  First, he

contends that the ALJ's alleged failure to account for his alleged need for an assistive device

necessarily means that the ALJ's RFC determination lacks substantial evidence.  *Id*. at pp. 7–12.

Second, Goodman claims that the ALJ failed to properly evaluate the medical-opinion evidence.

*Id*. at pp. 13–15.

A.      **The ALJ appropriately assessed the medical-opinion evidence in determining**
        **Goodman's RFC**

Goodman argues that although the ALJ found Dr. Alan Morris "persuasive," the ALJ

erred by failing to acknowledge Dr. Morris's "opinion" and instead "erroneously assert[ed] that

Dr. Morris did not offer an opinion on [Goodman's] specific functional limitations[.]"  Doc. 14

at pp. 7, 13 (internal quotations omitted).  Goodman further argues that because Dr. Morris's

"opinion" is consistent with Dr. Jennifer Barbin's opinion that the ALJ rejected, the ALJ's

failure to address Dr. Morris's opinion renders the RFC determination flawed for failure to

reconcile its contradictory assessments of Dr. Morris's and Dr. Barbin's "opinions."  *Id*. at p. 13.

In other words, Goodman contends that because the ALJ found Dr. Morris "persuasive," the

ALJ's failure to acknowledge Dr. Morris's medical "opinion" results in inconsistent assessments

by the ALJ since Dr. Morris's "opinion" was consistent with the opinion of Dr. Barbin that the

ALJ found "unpersuasive."

The Commissioner argues that the ALJ did not err in not addressing Dr. Morris's

"opinion" because it did not qualify as a medical opinion under the regulations.  The Court

agrees.  The regulations define a medical opinion as "a statement from a medical source about

what you can still do despite your impairment(s) and whether you have one or more impairment-

related limitations or restrictions" to perform physical, mental, sensory, and/or environmental

6

demands of work.  20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).  A medical opinion does not

include judgments about the nature and severity of an individual's impairments, medical history,

clinical findings, diagnosis, response to prescribed treatment, or prognosis.  20 C.F.R. §§

404.1513(a)(3), 416.913(a)(3).

The ALJ noted that Dr. Morris "performed a consultative examination of [Goodman] . . ."

Tr. 15.  After the ALJ documented Dr. Morris's observations, he stated that "[w]hile Dr. Morris

did not offer an opinion on [Goodman's] specific functional limitations, his observations are

persuasive since they illustrate that [Goodman] does not have any significant physical limitation

preventing him from performing a restricted range of light-duty work activity."  Tr. 15.  As

stated above, Goodman contends that Dr. Morris did opine on Goodman's physical limitations.

However, the record and Goodman's own arguments confirm that Dr. Morris gave no such

opinion.

Goodman claims that Dr. Morris offered an opinion on Goodman's functional limitations

when he checked a box on a form for the Missouri Department of Social Services that contained

the following boilerplate language:

> In my opinion[,] this individual does [] have a mental and/or physical disability
> which prevents him/her from engaging in that employment of gainful activity for
> which his/her age, training, experience or education will fit him/her.

Doc. 14 at p. 8 (quoting Tr. 486).  But opinions regarding whether Goodman is disabled are left

strictly to the ALJ.  20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3).  The regulations provide that

statements that the claimant is disabled or can work are "neither valuable nor persuasive"

evidence because the issue of disability is reserved to the Commissioner.  *Id*.  Moreover,

"[b]ecause [such statements] [are] neither valuable nor persuasive to the issue of whether [the

claimant is] disabled . . . under the Act, [ALJs] will not provide any analysis about how [they] considered such evidence in [their] determination or decision[.]" *Id.*

Moreover, Goodman's own characterization of Dr. Morris's "opinion" confirms that the only "opinion" offered by Dr. Morris was on the ultimate question of Goodman's disability. For instance, Goodman claims that Dr. Morris "concluded that Goodman could not perform gainful work activity." Doc. 14 at p. 13 (citing Tr. 486). Additionally, in arguing that that it "is not true" that Dr. Morris did not offer an opinion on Goodman's functional limitations, Goodman undermines his own position by stating, "[q]uite the contrary . . . Dr. Morris . . . concluded medically that Goodman was not capable of maintaining substantial gainful employment." Doc. 14 at p. 7. Finally, Goodman argues that Dr. Morris "opined explicitly, clearly and succinctly that his medical diagnostic conclusion was that Goodman was incapacitated for more than thirteen months." *Id.* at p. 8. Accordingly, the ALJ was not required to discuss this conclusory statement that Goodman was disabled by Dr. Morris. 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3).

Goodman next argues that Dr. Barbin made a similar conclusory statement regarding Goodman's disability that the ALJ addressed and found "not persuasive," and thus the ALJ erred by not addressing the same statement from Dr. Morris. Doc. 14 at p. 14. Goodman refers to the following statement from Dr. Barbin: "I do not see long term employment in this patient's future if he is unable to stand or walk distances and is plagued with neuropathic pain." *Id.* at p. 9 (citing Tr. 790). However, while Dr. Barbin did opine on the ultimate question of Goodman's disability, her opinion also contained specific functional limitations regarding Plaintiff's ability to stand and/or walk. Tr. 790. It was those specific functional limitations that constituted Dr.

8

Barbin's medical-source opinion, which, as explained below, the ALJ addressed appropriately. See 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

Shifting next to the whether the ALJ properly assessed Dr. Barbin's opinion, the Commissioner's regulations provide that, for claims filed on or after March 27, 2017, ALJs will not defer to or give any specific evidentiary weight, including controlling weight, to any medical opinion. *See* 20 C.F.R. §§ 404.1520c(a) (2017), 416.920c(a) (2017). Instead, ALJs must evaluate the persuasiveness of medical opinions and prior administrative medical findings in light of several factors, the most important of which are supportability and consistency with the record. 20 C.F.R. §§ 404.1520c(a)–(c) (2017), 416.920c(a)–(c) (2017). ALJs must explain how they considered the factors of supportability and consistency in their decisions, but need not explain how they considered the other factors. 20 C.F.R. §§ 404.1520c(b) (2017), 416.920c(b) (2017). Thus, as an initial matter, the Court rejects Goodman's argument that the ALJ erred by failing to state how he considered all of the medical-opinion-evaluation factors enumerated in the regulations at 20 C.F.R. §§ 404.1520c(c)(3)–(5) (2017) and 416.920c(c)(3)–(5) (2017). Doc. 14 at p. 14.

The ALJ properly found Dr. Barbin's statement that she does "not see long-term employment in this patient's future if he is unable to stand or walk distances and is plagued with neuropathic pain" unpersuasive for three reasons. Tr. 17. First, the ALJ appropriately discounted Dr. Barbin's opinion on whether Goodman could work because that issue is reserved to the Commissioner. Tr. 17; 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3). The ALJ also correctly discounted Dr. Barbin's opinion as lacking support because the opinion "appears to be based primarily on the claimant's subjective complaints and not objective medical testing[.]" Tr. 17; *see Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010) (finding the ALJ did not err in

discounting medical opinions because they were based largely on the claimant's subjective complaints); *Kirby*, 500 F.3d at 709 (holding that the ALJ was entitled to discount an opinion where the opinion was based largely on the claimant's subjective complaints rather than on objective medical evidence).  Third, the ALJ found that her opinion was inconsistent with other medical records in the record "which consistently showed the claimant's gait to be normal."  Tr. 17; *see also* Tr. 328, 348, 409, 434, 505, 581, 590, 600, 627, 630, 654, 658, 670, 674, 694, 740, 750, 773.  Thus, because the ALJ properly considered the supportability and consistency factors in discounting Dr. Barbin's opinion, the Court finds that substantial evidence supports the ALJ's finding that Dr. Bardin's opinion is "unpersuasive."

Even if this Court found substantial medical evidence in the record supporting Barbin's opinion, it cannot remand simply because it "would have reached a different conclusion than the ALJ or because substantial evidence supports a contrary conclusion."  *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (citing *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014)); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.").  Rather, this Court must affirm if the ALJ's finding "falls within the available zone of choice[.]"  *Schouten v. Berryhill*, 685 F. App'x 500, 501 (8th Cir. 2017) (citation omitted).  Here, for the reasons outlined above, the ALJ properly found that Barbin's opinion lacked support and was inconsistent with the record, and substantial evidence supports the ALJ's finding.  Because such a finding "falls within the available zone of choice," *Schouten*, 685 F. App'x at 501, the ALJ permissibly found the opinion not persuasive.

10

**B.    The ALJ appropriately considered Goodman's need for a handheld-assistive device in forming his RFC**

The RFC is defined as the most a claimant can do despite his limitations, including both physical and mental limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a).  "The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations."  *Hensley v. Colvin*, 829 F.3d 926, 931–32 (8th Cir. 2016) (quoting *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013)).  Here, the ALJ properly considered all the relevant evidence in reaching his RFC determination.

Goodman argues that substantial evidence does not support the ALJ's finding that he does not need a handheld-assistive device.  Doc. 14 at p. 7.  In determining Goodman's RFC, the ALJ found that "[n]othing convincing exists in the record to support the statement . . . that he requires an assistive device for ambulation."  Tr. 16.  Goodman claims that "[a]mple medical evidence supports the need for an assistive device for ambulation."  Doc. 14 at p. 7.

The first evidence that Goodman offers for support is Dr. Morris's "opinion."  Goodman notes that Dr. Morris stated in his observation notes that Goodman required a cane or walker, prescribed by his "primary care physician" "about 2 weeks ago."  Doc. 14 at p. 9 (citing Tr. 481).  Therefore, Goodman argues, Dr. Morris "was well aware . . . that Goodman required use of a cane or walker" when he "opined" that Goodman "was incapacitated for more than thirteen months."  *Id*. at pp. 8–9.  Thus, Goodman posits that because the ALJ found Dr. Morris's observations "persuasive," the ALJ erred in reaching his RFC determination that did not properly account for Dr. Morris's findings.

However, as explained above, Dr. Morris never opined that Goodman required an assistive device.  The only "opinion" Dr. Morris proffered was checking a box to indicate that he

11

believed that Goodman was disabled.  Because the ultimate issue of Goodman's disability rests

solely with the ALJ, Dr. Morris's "opinion" regarding Goodman's disability has no bearing on

the RFC.

Next, counter to Goodman's framing, Dr. Morris's examination records did not document

Goodman's need for an assistive device.  As the ALJ noted, while Goodman reported that he

"started using crutches . . . to take the weight off his left leg" and that "[h]is primary care

physician [gave] him an order [two] weeks [earlier] for either a walker or a cane[,]" Dr. Morris's

observation notes state that that Goodman was able to walk across the room without crutches.

Tr. 15; *see also* Tr. 481.  Additionally, while Goodman exhibited a limp and displayed some

reduced muscle strength in his upper extremities, Dr. Morris did not note any problems with

manual dexterity and Goodman could get on and off the examination table without difficulty.

Tr. 15; *see also* Tr. 481.  Dr. Morris also noted that Goodman retained nearly full muscle

strength in his lower extremities.  Tr. 15; *see also* Tr. 488.  Thus, although Goodman reported to

Dr. Morris that he required an assistive device, Dr. Morris's objective evaluation did not validate

Goodman's allegation.  Accordingly, Dr. Morris's observations regarding Goodman not needing

an assistive device support the ALJ's conclusion that the record lacks support for Goodman's

need for an assistive device.

Goodman next cites a letter from his primary-care physician, Dr. Barbin, stating that he

"uses a cane and a walker to assist with ambulation" and that she does not see "long term

employment in [Goodman's] future if he is unable to stand or walk distances and is plagued with

neuropathic pain."  Doc. 14 at p. 9 (citing Tr. 790).  However, as stated above, the ALJ properly

found that Dr. Barbin's opinion was not persuasive partly because the medical evidence in the

record did not support it.

12

In contrast, substantial evidence in the record supports that Goodman did not need an assistive device, including Dr. Morris's observations.  As discussed by the ALJ, Goodman had normal or no more than mildly-antalgic gait without the use of assistive device and had normal balance and motor coordination.  Tr. 328, 348, 409, 434, 505, 581, 590, 600, 627, 630, 654, 658, 670, 674, 694, 740, 750, 773.  Moreover, in addition to the evidence supporting that Goodman does not need an assistive device, the record supports the ALJ's RFC determination that Goodman can perform a reduced range of light work.  For instance, the record generally indicates that Goodman had no more than mild abnormalities, including occasionally reduced sensation in the extremities or some tenderness in the spine.  Tr. 299, 308, 354–356, 434, 481–482, 525–526.  Otherwise, examinations from multiple providers, including Dr. Barbin, documented largely unremarkable findings.  Tr. 315, 328, 341, 356, 391, 433–435, 441, 481, 505–506, 545, 581, 590, 600, 616–617, 627, 630, 654, 658, 670, 674, 694, 740, 750, 766, 773–774.

Goodman also argues that "[s]ubstantial evidence does not support the vocational witness's opinion testimony because the hypothetical question failed to take account [for] the medically documented and validated need for [a] handheld assistive device."  Doc. 14 at p. 11.  However, "[t]he ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole."  *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006); *see also Smith v. Colvin*, 756 F.3d 621, 627 (8th Cir. 2014) ("[A] hypothetical need only include impairments that the ALJ finds credible.").  Thus, because the ALJ found that the record did not support Goodman's need for an assistive device, he properly excluded that limitation from his hypothetical question to the vocational expert.  *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015).

In sum, the ALJ determined Goodman's RFC by considering the entire record, including his need for an assistive device, and found "nothing convincing" to support the need for such a device. For the reasons explained above, the Court finds that substantial evidence supports the ALJ's findings.

## V.      Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citing *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007)). Having found that substantial evidence supports the ALJ's conclusions and that the ALJ correctly applied the legal standards, this Court affirms the ALJ's decision.

Accordingly, the Court dismisses Goodman's Complaint with prejudice. Doc. 1. A separate judgment will accompany this Memorandum and Order. The Court directs the Clerk of Court to amend the case name and caption to reflect the substitution of Kilolo Kijakazi as Defendant in this suit.

So Ordered this 29th day of September 2021.

_____
**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**

14